[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this case tried to the court, plaintiff sues for insurance commissions allegedly earned and for damages resulting from defendant' s alleged breach of contract. Defendant counterclaims for damages allegedly resulting from plaintiff's breach of contract and violation of Connecticut Unfair Insurance Practices Act (CUIPA), § 38a-815 et. seq. and Connecticut Unfair Trade Practices Act (CUTPA) § 42a-110 et. seq.
The facts are as follows:
Defendant, an insurance agency in East Hartford, Connecticut hired plaintiff as an insurance salesman under an Employment Agreement (hereinafter Agreement) for a three year term commencing January 2, 1989 and terminating December 31, 1992. The Agreement had the following pertinent provisions:
 1. Plaintiff was hired to manage the personal lines of the defendant agency, which included auto, homeowners, boat, umbrella, life and disability coverages. CT Page 13831
 2. As personal lines manager, plaintiff was to service existing personal lines accounts, solicit new personal lines policies, perform such other duties customarily performed by a manager, and render such other unrelated duties assigned to him by the defendant agency.
 3. Plaintiff's salary was established at $42,000 per annum plus necessary expenses, and the base salary was to be increased based on performance and as mutually agreed to by plaintiff and defendant.
 4. The plaintiff was to be covered under defendant's "full medical insurance plan," no contribution was required from him, and the defendant reserved the right to change the plan, "however, the employee will always participate in whatever plan the employer offers to employees."
 5. At the end of the third year of the Agreement, provided $250,000 of commissions were generated by plaintiff, plaintiff and defendant were to form a new corporation from the personal lines division and plaintiff and defendant would each have a percentage ownership interest in the new corporation in accordance with a formula set forth in the Agreement.
 6. Plaintiff was not to divulge trade secrets of the defendant, defined to include defendant's customer list and premiums charged.
 7. Plaintiff also was not to "engage, directly or indirectly, either for himself or as agent or employee of any other, in selling or dealing in insurance products to the clients or customers of the employer, for a period of three (3) years after the termination of the employment herein created, without the written consent of employer."
 8. On termination, plaintiff was to be paid for fourteen days.
9. No modification of the Agreement was valid CT Page 13832 "unless in writing and duly executed by the party to be charged therewith.
A sharp conflict developed in the testimony of the plaintiff and defendant respecting an oral modification of the Agreement. Plaintiff testified the parties agreed that in addition to his salary, plaintiff would be entitled to 50% of all commissions he generated on commercial lines policies. At the end of 1989, plaintiff contended he earned $4500 under that arrangement and when he asked Michael Evans, principal of the defendant agency, for it, he was told that sum would be held in escrow and applied toward his ownership interest in the new personal lines division to be formed pursuant to the Agreement. The same thing happened at the end of 1990 and 1991. All told plaintiff testified he is owed $35,000 for earned and unpaid commercial lines commissions.
Michael Evans, testifying on behalf of the defendant, denied any agreement was reached between him and plaintiff to pay plaintiff anything for commercial lines policies, that plaintiff's salary, which rose from $42,807 in 1989 to $51,653 in 1992, compensated him for all his services, including what he did in commercial lines business. Moreover $35,000 for one-half of commissions earned on such policies would amount to plaintiff generating between $500,000 and $700,000 in premiums which he never came close to doing.
This court finds the testimony of Evans to be more credible. It concludes the parties did not orally agree to pay plaintiff additional commissions for commercial lines business, and plaintiff failed to prove he earned any specific amount of such commissions.
Plaintiff claimed defendant breached the Agreement by terminating dental coverage, thereby requiring plaintiff to obtain it at a cost of $1,000. The Agreement provides plaintiff was to be covered under the defendant's existing "full medical insurance plan". At the time plaintiff was hired, defendant's medical insurance plan included dental coverage and the court, based on the evidence, finds the parties intended "full medical insurance plan" to include such coverage. After the first year of the Agreement, defendant dropped the dental benefit from the medical insurance package it offered to employees. Plaintiff's claim for reimbursement for the cost to which he was put to obtain it himself, however, cannot be sustained because the Agreement clearly provides defendant reserved the right to change CT Page 13833 the medical insurance plan and plaintiff only had the right to "participate in whatever plan the employer offers to employees." (Underlining added). Plaintiff was afforded that right.
Plaintiff claims he was entitled to be paid for fourteen accrued vacation days. The Agreement is silent about vacations but defendant had established a written vacation policy that employees accrued vacation at the rate of one day per month of service for the current year and that permission of the employer-supervisor was required to carry over earned accrued vacation days to the next year. Based on the evidence, the court finds, that defendant's practice was not to pay for unused vacation days and plaintiff has not established any agreement by the defendant to treat him differently.
Plaintiff claims he is entitled to be paid for ninety days on termination of his employment. Although the Agreement provides for fourteen days, plaintiff testified that provision was for ninety days compensation in the version of the Agreement he signed. The court does not believe plaintiff's testimony on this point. The court finds plaintiff was paid all the termination compensation he was entitled to under the Agreement.
Plaintiff claims defendant agreed to pay a 10% bonus on new personal lines policies generated by plaintiff and he is owed on that agreement $200 for the months of November and December 1992. He also claims he is owed $500 for income taxes imposed on an increase in his salary to compensate for defendant's medical insurance being placed on a contributory basis, and $85 for unpaid expenses for December 1992. The defendant paid plaintiff at the time of termination $1397 to compensate for these claims and any others of plaintiff, and plaintiff accepted that sum. The court finds plaintiff has failed to prove he is entitled to any additional amount.
Thus the court concludes that plaintiff has failed to prove his cause of action against the defendant.
Defendant counterclaims for damages resulting from plaintiff breaching the restrictive employment covenant of the Agreement. The facts are that after plaintiff left the defendant, he worked as an insurance salesman for another insurance agency from January 1993 until March 1994. During that period, which was within three years of the termination of his employment with defendant, he sold insurance to former customers of defendant. CT Page 13834 Plaintiff testified he never solicited these customers; rather they came to him because they were dissatisfied with defendant's services. The court believes him, but concludes his writing these insurance policies for another agency, without securing defendant's consent, violated the Agreement. Moreover, the restrictive covenant is reasonable in that it is limited to plaintiff soliciting only defendant's former customers, and it meets the other tests of reasonableness itemized in New HavenTobacco Co. v. Parrelli, 18 Conn. App. 531, 533-4 (1989).
The premiums on policies written by plaintiff for defendant's former customers amounted to $23,624 and based on an average commission rate of 15%, resulted in commissions realized of $3543. Defendant is entitled to damages in that amount.
Defendant also counterclaimed for damages for plaintiff's violation of CUIPA and CUTPA based upon plaintiff attempting to get a commission on a CNA Group Life policy which commission belonged to defendant and which defendant ultimately received. The court finds that plaintiff acted responsibly in connection with that policy and concludes defendant failed to prove its CUIPA and CUTPA claims.
Accordingly, judgment may enter for the defendant on plaintiff's complaint, and judgment may enter for the defendant and against plaintiff on its counterclaim for the sum of $3543.
Robert Satter State Judge Referee